IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. _____

APRIL SPENCER,                      )
                                    )
    Plaintiff,              )
                                    )
    v.                      )
                                    )
SPORTSFIELD SPECIALTIES,            )
INC.,                               )
                                    )
    Defendant.              )

## COMPLAINT
## (JURY TRIAL DEMANDED)

Plaintiff files this action against Sportsfield Specialties, Inc. under Title VII of the Civil Rights Act of 1964, 42 U.S.C., et seq., as amended, and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. Section 1981, as amended. Plaintiff alleges that she was subjected to a racially hostile work environment initiated by her co-workers but which remain unchanged after complaints to management. Plaintiff also alleges that she was subject to retaliatory treatment after she complained to management about the racial hostility.

## I. <u>INTRODUCTION AND JURISDICTION</u>

1.    This is an action seeking legal and equitable relief under Title VII of the Civil Rights Act of 1964, <u>et seq</u>. ("Title VII"), and 42 U.S.C. §1981 ("§1981").

2.    Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343, this being a proceeding to enforce rights and remedies secured under Title VII and § 1981. Jurisdiction is also conferred upon this Court by 42 U.S.C. § 2000(3), <u>et seq</u>. and 28 U.S.C. § 1331.

3.      Jurisdiction is further invoked pursuant to 28 U.S.C. §§ 2201 and 2202, this being an action for declaratory judgment declaring illegal the act of Defendant complained of herein which violated rights secured to the Plaintiff by Title VII and § 1981.

## II.  PARTIES

4.      Plaintiff is an African-American female citizen and resident of Salisbury, Rowan County, North Carolina.

5.      Defendant is a New York Corporation operating and doing business in the State of North Carolina in Salisbury, Rowan County.  Defendant is an employer within the meaning or Title VII and § 1981.

## III.  FACTS

6.      Plaintiff was hired in November, 2018 as a baseball net sewer.  During her employment with Defendant, she always performed her duties in a satisfactory manner. Sportsfield Specialties, Inc. produces netting material for sporting events such as soccer and baseball.  It considers itself to be a leader in the manufacture and sale of athletic field equipment for all levels of play.  Plaintiff was usually assigned to work on netting for various sports. Plaintiff was the only African-American who worked in her area in the net department.

7.      On or about March 22, 2019, Matthew Berries, white male, a lead net cutter, made a noose on a Sportsfield Specialties sewing machine in the net department.  He walked up to Plaintiff while she was working and handed her the noose.

8.      On March 22, 2019, Plaintiff reported the incident to her Plant Manager, Donald Sexton, white male, who asked Plaintiff what she wanted out of the situation.  Plaintiff advised Sexton that she wanted  Berries to be fired or written up.  Sexton took the noose, put it in his

Case 1:22-cv-00677-WO-JEP   Document 1   Filed 08/18/22   Page 2 of 10

pocket and told Plaintiff that he would speak to Berries about the incident. To Plaintiff's knowledge, nothing ever happened to address this issue.

9.      After reporting the noose incident on March 22, 2019, Plaintiff was subjected to retaliatory treatment. Her supervisors, Donald Sexton and Ashley Sides, white female, began putting undue pressure on Plaintiff to complete the net orders. They also gave her significantly more work than other employees in the department. In addition to giving Plaintiff substantially more work than others in the department, the department allowed Berries to refuse to cut orders assigned to Plaintiff so that she could sew the nets. Berries' job was to cut nets so that the machine operators could sew them. He continued to cut the nets for others, but refused to do so for the Plaintiff, which rendered it difficult for her to complete all of the work that she was assigned. On occasions, when she had finished her other work, she would have no work to do because Berries would refuse to cut the work for her. Another example of Plaintiff being retaliated against was when she was improperly trained to do a task which resulted in her having to exert an unnecessary amount of physical energy to complete her net orders. When she was required to sew tunnels, she did over 100 tunnels by herself, even though the original procedure was to have two people work on the job.

10.     To further frustrate Plaintiff's ability to perform all of the work that was assigned to her, Plaintiff was moved from a faster operating machine number one, where she had been assigned since her employment, the operation of which allowed her to meet her production numbers. She was instead assigned to the slowest operating machine in the department, but was told that she was still expected to meet the production numbers given to her.

11.     A white worker, Tabitha, was assigned to machine number one, even though Plaintiff had more seniority than Tabitha, and a white female named Andrea was placed on the

3

second fastest machine in the department, even though she had been there only two months. Neither of these employees had the same production demands as the Plaintiff. When Plaintiff questioned her supervisor, Ms. Dial, white female, about the problem, Dial responded negatively and reminded her that she had the power to fire her.

12.    When Plaintiff asked Dial and Sexton if the other two workers could be trained on net tunnels in order to assist her, they denied her request and told her she had to sew the tunnels on her own. Plaintiff later learned that when Dial and a white employee named Williams were in the net department, one of them sewed the top seams of the tunnel and the other sewed the end caps and the doors into the baseball tunnels.

13.    On November 19, 2019, while Plaintiff was on a break, Dial approached her and aggressively slid the Plaintiff's portable work table to machine number three and threw the table down next to her feet. She again reminded Plaintiff that she had the ability to fire her.

14.    On November 21, 2019, Dial and Sexton informed the Plaintiff that she would be expected to sew sixty gauge tunnels on top of the two to three regular weight tunnels that she had to complete. To Plaintiff's knowledge, she was the only person in the nets department who had to sew sixty gauge tunnels by herself.

15.    Plaintiff was subjected to racial harassment by her coworkers, including a white coworker telling lies on her and calling her ugly when she wore her hair in an Afro style. When Plaintiff wore her hair in a natural Afro style, she would be ridiculed and called Michael Jackson. Plaintiff complained to her supervisor, Sides, about the comments. Sides told the Plaintiff that she was the problem, not the coworker.

16.    On one occasion, Tabitha, a coworker, left a knife on the Plaintiff's sewing machine.

17.     Plaintiff was aware that management tended to be unfair towards minorities. Racist remarks had been made about Mexicans.  African-American employees were told that they were not allowed to speak to each other during the work day.  One employee named Buddy Williams stated that Black women's butts are ghetto.  He attempted to imitate a caricature of a Black woman walking by walking with his butt stuck out.    Sides, the supervisor, witnessed this behavior and laughed.

18.     On or about October 30, 2019, a foam dummy was hung up by its neck in a noose in the break room.  Several white employees walked by and hit the dummy.  That dummy was eventually cut down by an African-American employee who showed it to Sides who laughed.

19.     On December 19, 2019, Plaintiff was shown a second noose.  A coworker, Tabitha, made a noose on the company sewing machine and showed it to Plaintiff in a menacing manner.  She later threw the noose in the trash, but Plaintiff retrieved it to show it to management.  Plaintiff reported this incident with the noose to Sexton and Jenny Goo in Human Resources.  Goo denied that it was a noose at all and stated that Tabitha had only attempted to make a dog collar.  No action was taken pursuant to Plaintiff's second complaint about a noose in her work place.

20.     On or about January 1, 2020, Plaintiff texted her supervisor to advise that she would be out of work on January 2 and January 3, 2020.  She had to seek professional counseling to help her cope with the anxiety from the racially hostile work environment to which she was subjected at Sportsfield Specialties, Inc.  The work conditions were so severe that they resulted in Plaintiff's counselor advising her not to return to work.  Plaintiff's counselor wrote a letter excusing Plaintiff from work from  January 6, 2020 through January 13, 2020.  By January 13,

Case 1:22-cv-00677-WO-JEP   Document 1   Filed 08/18/22   Page 5 of 10

2020, Plaintiff determined that the working conditions were so intolerable that she could not return to the work place.

## IV.  CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION:  RACIAL HARASSMENT (TITLE VII AND SECTION 1981)

21.      Plaintiff realleges paragraphs 1 through 20 above.

22.      Plaintiff was subjected to a racially hostile work environment.  Plaintiff, an African-American female, was subjected to being exposed to a noose on numerous occasions in the work place, ridicule for her natural hair style, and subjected to racial jokes and racist behavior by her coworkers, which went unchecked by management, even though it was reported to them.  In addition, some of the racist behavior occurred in the presence of managers who did nothing to stop the behavior, but instead joined in the laughter and ridicule.  The behavior to which the Plaintiff was subjected was both objectively and subjectively offensive.  Further, the hanging of a dummy from a noose in the work place with white employees taking punches at it and laughing about it, is sufficient to constitute unlawful harassment in the work place.  This is even compounded by the fact that the supervisor laughed when shown the dummy and told about the behavior.

23.      Defendant's actions violate Title VII and Section 1981.  Because Defendant's managers were engaged in some of the behavior themselves, and openly ratified other behavior, Defendant is strictly liable for the racial harassment.

24.      Defendant's actions violate Title VII, 42 U.S.C., Section 2000e et seq., as amended, and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. Section 1981, as amended.

25.     As a result of Defendant's actions, Plaintiff has suffered emotional distress and economic harm.

26.     Defendant's actions were willful, wanton and in gross disregard to the Plaintiff's rights, entitling Plaintiff to punitive damages.

## SECOND CAUSE OF ACTION:  RETALIATION

27.     Plaintiff realleges paragraphs 1 through 26 above.

28.     Plaintiff complained to Defendant about racial harassment on more than one occasion beginning on March 22, 2019 when she first complained about the first noose incident. She voiced other concerns about racial harassment to management, but nothing was done to correct those problems.  Instead, Plaintiff was subjected to a severe change in the terms and conditions of her employment.  She was required to perform tasks alone which previously and normally, in the regular process, would have been done by two employees.  She was given additional work and a less efficient machine on which to complete the work.  Having to perform some of the tasks on her own resulted in Plaintiff having to exert extreme physical energy to complete the task.  Nothing was done when Plaintiff's orders were not precut by the employee who first brandished a noose at her.  This caused an interruption in Plaintiff's work.

29.     Management was made aware of the problems, but did nothing to address them. Indeed, Plaintiff's direct supervisor Sides engaged in threatening behavior towards Plaintiff and repeatedly let Plaintiff know that Sides could fire her.  As a result of her complaints about the racial harassment, Plaintiff was subjected to different terms and conditions of her employment. These differences in the terms of her employment and those of her white coworkers constituted an adverse employment action.  There was a causal connection between the Plaintiff's report of

7

the racial harassment on March 22, 2019 and the subsequent changes in the terms and conditions of her employment.

30.     As a result of the racially hostile work environment and the retaliatory actions by her managers and the plant manager, Plaintiff experienced such anxiety and stress that she had to consult a therapist who recommended that she take time off work.  Plaintiff's working environment was so severe and pervasive that no person should be expected to endure it. Plaintiff was subjected to racial ridicule and harassment, was twice shown a noose, had a knife left on her desk, was constantly threatened with being fired and was given multiple times the production requirement of her white coworkers. All of these conditions led to Plaintiff leaving her employment for her safety and health.

31.     Defendant retaliated against Plaintiff in violation of Title VII of the Civil Rights Action of 1964, 42 U.S.C. Section 2000e et. seq., as amended,  and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. Section 1981 (a).

32.     As a result of Defendant's actions, Plaintiff has suffered economic and emotional damages.  Plaintiff is entitled to compensatory damages.

33.     Defendant's actions complained of herein constitute wanton, willful and gross violations of the Plaintiff's rights.  Plaintiff is entitled to punitive damages as a result thereof.

34.     Plaintiff has suffered damages, including economic damages and emotional distress.


## V.  <u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

35.     Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC), Charge Number 430-2020-02098, received by the EEOC on

June 5, 2020. The EEOC issued a Dismissal and Notice of Rights on May 20, 2022. Plaintiff is filing this action within 90 days of receiving the Dismissal and Notice of Rights. She has complied with all jurisdictional requirements and has exhausted administrative prerequisites before initiating this action.

## VI. <u>JURY TRIAL DEMANDED</u>

36.   Plaintiff hereby demands a trial by jury.

## VII. <u>PRAYER FOR RELIEF</u>

37.   Wherefore, plaintiff prays that the discrimination alleged herein be remedied in full and that the Court, after a jury trial:

(1)   Declare the actions complained of herein to be illegal;

(2)   Issue an injunction enjoining defendant, its agents, its employees, successors, attorneys and those acting in concert or participation with defendant and at its direction, from engaging in the unlawful practices set forth herein and any other employment practice to be shown in violation of Title VII of the Civil Rights Action of 1964 and 42 U.S.C., § 1981;

(3)   Award plaintiff compensatory damages, including damages for mental anguish and stress;

(4)   Award plaintiff make whole relief under Title VII and Section 1981;

(5)   Award plaintiff her costs and expenses in this action, including reasonable attorney's fees, costs and other litigation expenses;

(6)   Grant such other and further relief as may be just and necessary to afford complete relief to plaintiff.

This 18th day of August, 2022.

/s/ *Geraldine Sumter*
GERALDINE SUMTER
N.C. Bar No. 11107
Ferguson Chambers & Sumter, PA
309 East Morehead Street, Suite 110
Charlotte, North Carolina 28202
Telephone:      (704) 375-8461
Facsimile:      (980) 938-4867
E-Mail:         gsumter@fergusonsumter.com

**ATTORNEY FOR PLAINTIFF**